IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| BILLY RAY MURRELL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | No. 3:12-cv-3757-G-BN |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff Billy Ray Murrell seeks judicial review of a final adverse decision of the
Commissioner of Social Security pursuant to 42 U.S.C. § 405(g). For the reasons stated
herein, the hearing decision should be reversed in part and remanded for further
proceedings.

**Background**

Plaintiff alleges that he is disabled due to a variety of ailments, including
disorder of the lumbar spine, hypertension, obesity, depression, and mental
retardation. After his application for supplemental security income ("SSI") benefits was
denied initially and on reconsideration, Plaintiff requested a hearing before an
administrative law judge ("ALJ"). That hearing was held on February 15, 2011. At the
time of the hearing, Plaintiff was 53 years old. He is a high school graduate, and the
ALJ found that he has past work experience as a laborer, sanitation worker, grounds

keeper, and driver. Plaintiff has not engaged in substantial gainful activity since December 16, 2009.

The ALJ found that Plaintiff was not disabled and therefore not entitled to SSI benefits. Although the medical evidence established that Plaintiff suffered from disorder of the lumbar spine, hypertension, and obesity, the ALJ concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations. The ALJ further determined that Plaintiff had the residual functional capacity to perform his past relevant work as a driver. Given Plaintiff's ability to return to his past relevant work as a driver, the ALJ determined that Plaintiff was not disabled under the Medical-Vocational Guidelines.

Plaintiff appealed that decision to the Appeals Council. The Council denied review, and the ALJ's decision became final. Plaintiff then filed this action in federal district court.

Plaintiff challenges the hearing decision on three grounds: (1) whether the ALJ's Step 2 finding is supported by substantial evidence because it failed to include Plaintiff's reduced cognitive capacity as a severe impairment; (2) whether the Commissioner erred by failing to find that Plaintiff's mental retardation meets or equals listing 12.05 at Step 3 of the sequential analysis; and (3) whether the ALJ's Step 4 finding is not supported by substantial evidence because Plaintiff's past relevant work as a driver did not qualify as substantial gainful activity.

The undersigned recommends that the hearing decision should be affirmed as to the first two issues but reversed as to the third and that this case should be

remanded to the Commissioner of Social Security for further proceedings consistent with these findings and conclusions.

**Legal standards**

Judicial review in social security cases is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the proper legal standards were used to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues *de novo*. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). This Court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

A disabled worker is entitled to monthly social security benefits if certain conditions are met. *See* 42 U.S.C. § 423(a). The Act defines "disability" as the inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months. *See id.* § 423(d)(1)(A); *see also Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985). The Commissioner has promulgated a five-step sequential evaluation process that must be followed in making a disability determination:

1.      The hearing officer must ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.

2.      The hearing officer must determine whether the claimed impairment is "severe." A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities. This determination must be made solely on the basis of the medical evidence.

3.      The hearing officer must decide if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations. The hearing officer must make this determination using only medical evidence.

4.      If the claimant has a "severe impairment" covered by the regulations, the hearing officer must determine whether the claimant can perform his or her past work despite any limitations.

5.      If the claimant does not have the residual functional capacity to perform past work, the hearing officer must decide whether the claimant can perform any other gainful and substantial work in the economy. This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

See 20 C.F.R. § 404.1520(b)-(f); Audler v. Astrue, 501 F.3d 446, 447-48 (5th Cir. 2007) ("In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity."). The claimant bears the initial burden of establishing a disability through the first four steps of the analysis; on the fifth, the burden shifts to the Commissioner to show that there is other substantial work in the national economy that the claimant can perform. See Audler, 501 F.3d at 448. A finding

that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *See Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In reviewing the propriety of a decision that a claimant is not disabled, the Court's function is to ascertain whether the record as a whole contains substantial evidence to support the Commissioner's final decision. The Court weighs four elements to determine whether there is substantial evidence of disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *See Martinez*, 64 F.3d at 174.

The ALJ has a duty to fully and fairly develop the facts relating to a claim for disability benefits. *See Ripley*, 67 F.3d at 557. If the ALJ does not satisfy this duty, the resulting decision is not substantially justified. *See id.* However, the Court does not hold the ALJ to procedural perfection and will reverse the ALJ's decision as not supported by substantial evidence where the claimant shows where the ALJ failed to fulfill the duty to adequately develop the record only if that failure prejudiced Plaintiff, *see Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012) – that is, only if Plaintiff's substantial rights have been affected, *see Audler*, 501 F.3d at 448. "Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision." *Ripley*, 67 F.3d at 557 n.22. Put another way, Plaintiff "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

**Analysis**

<u>The ALJ's Step 2 Severity Findings</u>

Plaintiff first contends that the ALJ's Step 2 finding is not supported by substantial evidence because it failed to include Plaintiff's reduced cognitive capacity as a severe impairment. Plaintiff does not argue that the ALJ applied the wrong severity standard – which, in the Fifth Circuit, is governed by *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1985) – but rather that, in light of the consultative examination by Dr. Grant Hellyer, the evidence shows that Plaintiff's reduced cognitive capacity was severe and that the ALJ should have included corresponding non-exertional limitations in his RFC assessment.

The relevant evidence in the record includes a consultative examination by Dr. Hellyer, Plaintiff's testimony that he took special education classes in high school, and Plaintiff's high school I.Q. score of 58. At the consultative examination, Plaintiff took the WAIS-III to assess his current levels of intellectual functioning. *See* Dkt. No. 15-3 at 456. Plaintiff scored in the mildly mentally retarded range of intelligence, with a Verbal I.Q. of 66, a Performance I.Q. of 65, and a Full Scale I.Q. of 63. *See id.* However, Dr. Hellyer stated that he thought that these scores "may be an underestimate of the claimant's actual functioning which is probably more in the borderline range of intelligence." *Id.* Dr. Hellyer noted several more times in his evaluation that he "thought [Plaintiff's] intellectual functioning to be more in the borderline range of intelligence," rather than being mentally retarded. *Id.* at 457; *see also id.* at 456. Dr. Hellyer based his opinion on the fact that Plaintiff previously had a driver's license and that he lives independently. *See id.* at 457. Dr. Hellyer also noted that he had "some

concerns that the claimant was underperforming on the Mental Status Exam, especially on the memory section." *Id.* at 455.

In addition to the consultative examination, Plaintiff testified that he took special education classes in high school. *See* Dkt. No. 14-2 at 27.

Finally, Plaintiff provided evidence of a high school I.Q. score of 58 to the Appeals Council but not to the ALJ. The Appeals Council stated that it considered the additional evidence but found that it did not provide a basis for changing the ALJ's decision. *See* Dkt. No. 14-2 at 1-2.

In his decision, the ALJ sets forth a detailed explanation as to why he did not find Plaintiff's borderline intellectual functioning to be a severe impairment. *See id.* at 15-16. The ALJ's finding was based largely on Plaintiff's activities of daily living, which demonstrated that Plaintiff was able to live independently, care for his personal needs, maintain positive relationships, and perform part-time work, and on Dr. Hellyer's opinion that Plaintiff operated at a borderline intellectual level but was likely not mentally retarded. *See id.*

The ALJ's determination that Plaintiff suffered from borderline intellectual functioning, rather than mental retardation, and that Plaintiff's borderline intellectual functioning is not a severe impairment is supported by substantial evidence. "An ALJ may make factual determinations on the validity of I.Q. tests." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991); *see also Hamilton v. Shalala*, 39 F.3d 319, 319-320 (5th Cir. 1994). And Plaintiff's high school I.Q. score and records are too removed in time to prove that Plaintiff currently suffers from a severe impairment based on his cognitive functioning. *See Bordelon v. Shalala*, 41 F.3d 661, 661 (5th Cir. 1994)

(holding that plaintiff's high school I.Q. score was "too removed in time to be valid proof that [plaintiff] suffered from retardation at the time of his disability claim").

Moreover, even if the ALJ's determination that Plaintiff's borderline intellectual functioning was not a severe impairment was error, Plaintiff cannot show the prejudice required for remand. Where an ALJ determines that an impairment is not severe but does not end his analysis at Step 2 and goes onto consider all symptoms throughout the remaining steps of the analysis, an error in the severity analysis is not prejudicial. *See Herrera v. Comm'r of Soc. Sec.*, 406 F. App'x 899, 903 (5th Cir.2010) ("[T]his case did not turn on a finding that [plaintiff's] impairments were not severe at step two; rather, the ALJ concluded that [plaintiff] was not disabled because, despite his severe impairments, he retained the residual functional capacity to do other work."); *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir.1987) (finding that any error at Step 2 was not grounds for a remand because the ALJ continued through Step 4 of the sequential analysis); *accord Stovall v. Astrue*, No. 3:09-cv-614, 2012 WL 1067671, at *2 (S.D. Miss. Mar. 29, 2012). Here, despite finding Plaintiff's borderline intellectual functioning to be non-severe, the ALJ considered specifically Plaintiff's mental impairments at Step 3. *See* Dkt. No. 14-2 at 16.

In addition, borderline intelligence is <u>not</u> a non-exertional limitation for purposes of the RFC determination. *See Arce v. Barnhart*, 185 F. App'x 437, 439-40 (5th Cir. 2006) ("Under *Selders* and *Johnson*, however, borderline intelligence is not merely an <u>insufficient</u> non-exertional limitation; it is not a non-exertional limitation <u>at all</u>."). Nevertheless, in this case, the ALJ did appear to impose a non-exertional limitation on Plaintiff based on his borderline intellectual functioning when he noted

that Plaintiff has the residual functional capacity to perform light work, "except the claimant is limited to simple routine work." Dkt. No. 14-2 at 16. Although Plaintiff contends in his moving brief that the "ALJ's RFC assessment did not contain any non-exertional limitations associated with [Plaintiff's] mental retardation," Dkt. No. 19 at 11, Plaintiff changes tack in his reply when addressing another issue, noting that "the ALJ included non-exertional limitations in his RFC assessment," Dkt. No. 21 at 9. The ALJ's limitation that Plaintiff perform "simple and routine work" can only plausibly be based on his borderline intellectual functioning. Therefore, although borderline intelligence does not qualify as a non-exertional limitation "at all," the ALJ determined that, under the facts of this case, a non-exertional limitation should be imposed.

As such, Plaintiff can show no prejudice from the ALJ's determination that his borderline intellectual functioning was not a severe impairment, if any such determination was error. *See Caradine v. Astrue*, No. 1:08-cv-305, 2009 WL 3769771, at *3 n.9 (N.D. Miss. Nov. 10, 2009) (holding that plaintiff was unable to show prejudice at Step 2 when the ALJ found that plaintiff suffered from severe borderline intellectual functioning instead of mild mental retardation in light of the ALJ's ultimate finding that plaintiff should be limited to only sedentary work with simple instructions and gradual changes); *see also Cornejo v. Colvin*, No. EP-11-cv-470, 2013 WL 2539710, at * 9 (W.D. Tex. June 7, 2013) ("[T]he limitations on which the RFC is based are not required to be included verbatim in the RFC or in a hypothetical to the vocational expert.") (citing *Bordelon v. Astrue*, 281 F. App'x, 418, 422-23 (5th Cir. 2008)).

The ALJ's Step 3 Finding That Plaintiff's Borderline
Intellectual Functioning Does Not Meet Or Equal A Listing

The undersigned has already concluded that substantial evidence supports the ALJ's finding that Plaintiff suffered from borderline intellectual functioning and not mental retardation. For many of the same reasons, the undersigned concludes that substantial evidence supports the ALJ's finding that Plaintiff's borderline intellectual functioning does not meet or equal a listing.

Plaintiff asserts that the record shows that he meets listing 12.05(B) and listing 12.05(C). Plaintiff states that the "required level of severity ... is met when the requirements in A, B, C, or D are satisfied." Dkt. No. 19 at 13. Section B requires " a valid verbal, performance, or full scale IQ of 59 or less," and Section C requires "a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Dkt. No. 19 (quoting 20 C.F.R. Part 404, Subpart P, Appendix 1).

Plaintiff argues that his high school I.Q. score of 58 meets Section B's requirements and that his I.Q. score of 63 supplied by Dr. Hellyer, plus one of the severe physical impairments found by the ALJ, meet Section C's requirements. Plaintiff's analysis gives far too much weight to his I.Q. scores. The Fifth Circuit has held that a high school I.Q. score is not a "valid" I.Q. score for Section B. *See Bordelon*, 41 F.3d at 661(holding that plaintiff's high school I.Q. score was "too removed in time to be valid proof that [plaintiff] suffered from retardation at the time of his disability claim"). And, as discussed above, an ALJ may reject an I.Q. score in light of a plaintiff's daily activities and/or prior work history or for other reasons. *See Muse,* 925 F.2d at

790; *see also Hamilton*, 39 F.3d at 319-320; *Cole v. Barnhart*, 69 F. App'x 658, 658 (5th Cir. 2003).

The undersigned finds that substantial evidence supports the ALJ's determination that Plaintiff's borderline intellectual functioning does not meet the requirements for Listing 12.05.

Further, the undersigned notes that Plaintiff complains that the ALJ did not provide sufficient analysis for his determination as to why Plaintiff was not found disabled at Step 3. *See* Dkt. No. 19 at 12. However, as Plaintiff acknowledges, Fifth Circuit precedent does not require remand unless Plaintiff's substantial rights have been affected. *See id.* (citing *Audler*, 501 F.3d at 448). As discussed at length, Plaintiff cannot demonstrate prejudice because Plaintiff failed to demonstrate that he met the requirements of Listing 12.05. In any case, the undersigned notes that the ALJ adequately performed his analysis of the evidence offered in support of Plaintiff's claim for disability. *See* Dkt. No. 14-2 at 15-18. The ALJ simply did not confine his analysis to his discussion of Step 3.

## The ALJ's Step 4 Finding

Finally, Plaintiff asserts that the ALJ's Step 4 finding is not supported by substantial evidence because Plaintiff's past relevant work as a driver did not qualify as substantial gainful activity. Plaintiff is correct, and this portion of the Commissioner's decision should be reversed and remanded for further proceedings on this issue.

At Step 4, the ALJ determined that Plaintiff could perform his past relevant work as a driver and concluded his analysis. *See* Dkt. No. 14-2 at 18. As Plaintiff points

out – and Defendant concedes – Plaintiff's past relevant work as a driver did not qualify as substantial gainful activity. "Past relevant work is work that [plaintiff has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [plaintiff] to learn to do it." 20 C.F.R. § 404.1560(b)(1). Whether a plaintiff has engaged in substantial gainful activity is determined by earnings. *See id.* § 404.1574. There is no dispute that Plaintiff's wages fell far below the threshold earnings required to constitute substantial gainful activity. *See* Dkt. No. 19 at 15; Dkt. No. 20 at 8.

While Defendant concedes that the ALJ's Step 4 finding was in error, Defendant contends that the error was not harmful because the Medical-Vocational Guidelines (the "Grids") direct a finding that Plaintiff was not disabled at Step 5. *See* Dkt. No. 20 at 9-10. Plaintiff responds that the regulations expressly prohibit reliance on the Grids if non-exertional limitations apply.

"When the characteristics of the claimant correspond to criteria in the Medical-Vocational Guidelines of the regulations ... and the claimant either suffers only from exertional impairments or his non-exertional impairments do not significantly affect his residual functional capacity, the ALJ may rely exclusively on the Guidelines in determining whether there is other work available that the claimant can perform. Otherwise, the ALJ must rely upon expert vocational testimony or other similar evidence to establish that such jobs exist.*"Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987) (internal citations omitted).

As discussed above, the Fifth Circuit does not recognize borderline intellectual functioning to be a non-exertional limitation and, in similar cases, has concluded that

application of the Grids was acceptable and a vocational expert's testimony was not required. *See Johnson v. Sullivan*, 894 F.2d 683 (5th Cir. 1990). Nevertheless, the ALJ in this case did impose nonexertional limitations, and Defendant has not asserted that the imposition of such limitations was error. Therefore, application of the Grids would be improper, and the testimony of a vocational expert is required. *See Newton v. Apfel*, 209 F.3d 448, 458-59 (5th Cir. 2000); *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999).

Because the ALJ's Step 4 finding was invalid, and the ALJ should have, but did not, proceed to Step 5, this case should be reversed and remanded for further proceedings consistent with these findings and conclusions.

## Recommendation

The Commissioner's decision should be reversed in part and this case remanded for further proceedings consistent with these findings and conclusions.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the

factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    DATED: August 6, 2013

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE